**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

**v.**

**Ronald James STRACHAN,**
**Defendant–Appellee.**

**No. 87SA329.**

Supreme Court of Colorado,
En Banc.

June 19, 1989.

James F. Smith, Dist. Atty., Frank H. Oldham, Sp. Deputy Dist. Atty., Denver, for plaintiff-appellant.

Craig L. Truman, P.C., Craig L. Truman, Denver, for defendant-appellee.

VOLLACK, Justice.

The prosecution appeals the Adams County District Court's entry of a judgment of acquittal notwithstanding the verdict, entered after a jury found Strachan guilty of first degree perjury. We reverse.

### I.

In 1985 the Colorado State Grand Jury conducted an investigation of alleged improprieties by members of the City Council for the City of Thornton, Colorado. The allegations were that certain individuals including Ronald Strachan (Strachan or the defendant) had assisted in and facilitated the payment of money by a developer to certain members of the city council as a bribe. The developers needed a favorable vote by council members for utilities needed for the development of a proposed mobile home park.

The Thornton Police Department received a complaint from an anonymous tipster, later identified as Charlene Molden, who made allegations of public corruption in the Thornton City Council. The police conducted an investigation that led them to Councilman Frank Slechta, who in turn advised the police of his contacts with Ronald Strachan.

The allegation was that Strachan requested $12,000, payable in two payments, in exchange for the city council's approval of the utilities. Charlene Molden and Gregory Kent, working on behalf of a project called the Riverdale Venture, sought to build a mobile home park on property located in Adams County. To do so, they needed approval for zoning changes for utility services from Thornton city officials. Councilman Frank Slechta, a member of the utility board, referred them to Ron Strachan because Strachan was "influential" in Thornton city government. The allegation was that Strachan agreed to assist in passing payments to city council members to ensure that they would cast the required votes.

The testimony at trial established that Kent sent a $7,000 check to Charlene Molden, payable to her. Molden took this check to a bank and exchanged it for a $7,000 cashier's check payable to Crown Masonry. Crown Masonry was "a subsidiary or part of a corporation Strachan and Sloan belonged to." Strachan was a director of Crown Masonry. Molden then met with Strachan and gave him the check, allegedly in exchange for his assistance in getting the necessary votes from the members of Thornton City Council. The allegation was that Slechta later received $1,200 from Strachan as a result of his affirmative votes in this matter. In August 1984 Charlene Molden received a $5,000 check for "advance commissions" from PDWA, a

group with which Kent was affiliated. She kept $1,000 and wrote a check for the remaining $4,000 to Thornton City Councilman Lynn Paxton.

Based on this information, the grand jury began an investigation and Strachan was called to testify. He gave general testimony that he had had nothing to do with a bribery or payoff. Specifically, he denied that he had anything to do with the transfer of the $7,000 check that was alleged to be part of the payoff. As a result of the grand jury investigation Strachan was charged by indictment with six felony counts: bribery, compensation for past official behavior, conspiracy to commit bribery, conspiracy to commit compensation for past official behavior, and two counts of first degree perjury.

A jury trial was held in April 1984 at which Strachan gave substantially the same testimony as heard by the grand jury. Before submitting the case to the jury, the trial court granted Strachan's motion for judgment of acquittal on bribery, the first count.[1] The remaining five counts were renumbered and submitted to the jury. The jury found Strachan guilty of one of the perjury counts (Count 5) and not guilty of the other four counts.

Strachan filed a motion for judgment of acquittal notwithstanding the verdict on Count 5, arguing that the conviction on one perjury count was inconsistent with the acquittals on the other counts. A sentencing hearing was held at which the trial court ruled that the jury's verdicts were inconsistent, granted the motion, and entered a judgment of acquittal. The prosecution appeals from this judgment and asks us to reverse, reinstate the jury verdict, and remand the case for imposition of the sentence.

## II.

### A.

The narrow issue presented by these facts is whether the trial court correctly held that, as a matter of law, the jury's guilty verdict on one perjury charge was inconsistent with the verdicts acquitting Strachan of the conspiracy charges.[2]

Where there is a verdict of not guilty on one count and a verdict of guilt on another, and the former necessarily determines that the evidence failed to establish a fact which is an essential ingredient of the offense charged in the other count, then, in determining whether the evidence was sufficient to sustain the finding of guilt, the court must exclude from consideration the fact so found in favor of the accused.

*Dunn v. United States,* 284 U.S. 390, 402–03, 52 S.Ct. 189, 194, 76 L.Ed. 356 (1932). Each case becomes a question of law, for the court to decide whether "outside the fact eliminated by the verdict of not guilty, the evidence was sufficient to warrant the conviction." *Id.* at 403, 52 S.Ct. at 194.

The well-established rule is that jury verdicts will not be reversed for inconsistency if the "crimes charged required different elements of proof, and the jury could ... find from the very same evidence that the element of one crime was present while at the same time finding that the element of another charged crime was absent." *People v. Morgan,* 637 P.2d 338, 344 (Colo.1981) (quoting *People v. Mayfield,* 184 Colo. 399, 403, 520 P.2d 748, 750 (1974)); *see also People v. Powell,* 716 P.2d 1096, 1106 (Colo.1986). We have held that where the statutory definition of one offense and the jury instruction based thereon "included elements separate and distinct" from the elements of the other offense, a verdict of guilt on one offense and

---

**1.** The trial court's rationale for dismissing the bribery charge was that because "the check was cashed on June 26th after the crucial vote had been taken," the jury could not possibly find that "the defendant conferred a pecuniary benefit upon a public servant, Slechta, with the intent to influence the public servant's vote."

**2.** The trial court specifically ruled that it was inconsistent for the jury to convict Strachan of perjury but find him "not guilty of either conspiracy to commit bribery or conspiracy to commit compensation for past official behavior." Because the ruling was limited to the asserted inconsistency between the perjury conviction and the acquittal of these two conspiracy counts, we limit our analysis accordingly.

acquittal on the other is not inconsistent. *People v. Noble,* 635 P.2d 203, 212 (1981). As long as a jury could "entertain a reasonable doubt" on any element, such a verdict is not inconsistent. *Id.* Acquittal of a substantive offense forecloses conviction of conspiracy to commit that same offense, if the same evidence relied upon to establish conspiracy is the evidence that was found insufficient to establish the substantive offense. *Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966).[3] That rule does not apply here, however, because Strachan was acquitted of conspiracy and convicted of perjury.

The charges submitted to the jury, as renumbered, were the following:

1: Compensation for Past Official Behavior
—(not guilty)
2: Conspiracy to Commit Bribery
—(not guilty)
3: Conspiracy to Commit Compensation for Past Official Behavior
—(not guilty)
4: First Degree Perjury
—(not guilty)
5: First Degree Perjury
—(guilty)

The trial court's rationale for granting the motion for judgment of acquittal on Count 5 was that if the jury found Strachan guilty of perjury, then Strachan had to be found guilty of either Count 2—Conspiracy to Commit Bribery—or Count 3—

---

**3.** The *"Robles* rule" has been codified at section 18-2-206(2), 8B C.R.S. (1986).

**4.** The trial court entered this ruling:

The Court's been troubled by the verdict ever since it was returned. The Court doesn't lightly ever set aside a jury verdict and I would construe the evidence and the jury deliberations in the light most favorable to sustaining the jury verdict. But in a charge of first-degree perjury the question—materiality of the statement itself is a question that the Court has to determine according to case law that the Court's familiar with. And I think we argued that at some great length during the course of the trial and the Court found that the statement in fact was material and *the jury found that Mr. Strachan had committed perjury as to that count. And I don't know how you reconcile that with the jury then not*

---

Conspiracy to Commit Compensation for Past Official Behavior (hereinafter referred to as conspiracy to commit unlawful compensation).[4]

The jury was given these instructions, which were consistent with the statutory elements of the crimes.

### INSTRUCTION NO. 6

The elements of the crime of conspiracy to commit bribery are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. with the intent to promote or facilitate the commission of the crime of bribery,

4. agreed with another person or persons that they, or one or more of them, would engage in conduct which constitutes bribery or an attempt to commit bribery and,

5. the defendant, or a person with whom the defendant conspired, has performed an overt act in pursuance of such conspiracy.

### INSTRUCTION NO. 7

The elements of the crime of conspiracy to commit compensation for past official behavior are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

---

*finding or finding that Mr. Strachan was not guilty of either conspiracy to commit bribery or conspiracy to commit compensation for past official behavior. If they find him guilty of perjury, he has to be guilty of one of the other two.* I don't think that he can stand guilty of perjury and then not guilty of either one of the other two offenses. I just don't see how that's logically consistent or legally consistent or internally consistent. It seems to me that this is the sort of a hallmark case of inconsistent verdicts.

In any event, I'm going to find that the verdicts in this case are inconsistent, logically, legally and internally with each other. Making that type of finding then I'll grant the motion for judgment of acquittal on that basis.

(Emphasis added).

3. with intent to promote or facilitate the commission of the crime of compensation for past official behavior,

4. agreed with another person or persons that they, or one or more of them, would engage in conduct which constitutes compensation for past official behavior or an attempt to commit compensation for past official behavior, and

5. the defendant, or a person with whom the defendant conspired, has performed an overt act in pursuance of such conspiracy.

### INSTRUCTION NO. 8

The elements of the crime of perjury in the first degree are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. in any official proceeding,

4. knowingly,

5. made a false statement, which he did not believe to be true,

6. under an oath required or authorized by law.

The indictment leading to renumbered Counts 2 and 3 (conspiracy to commit bribery and conspiracy to commit unlawful compensation) charged that in 1984, between June 1 and August 1, certain individuals acting on behalf of the Riverdale Venture met with Ronald Strachan and agreed that Frank Slechta would receive compensation from Strachan, in exchange for Slechta's favorable vote on the issue of selling utility services to Riverdale.

The first perjury count, renumbered as Count 4, asserted that when Strachan appeared before the grand jury on November 27, 1985, he gave false testimony about a meeting with Charlene Molden at the Velvet Touch Lounge.[5] The office in the Velvet Touch Lounge was "a common office" for the two businesses located in the building. The Velvet Touch was also "kind of a

hang-out for city government officials." That testimony was:

Q: In calendar year 1984, did you have any business dealings with Charlene Molden?

A: No. I never had any business dealings with Charlene Molden.

Q: Have you ever met with Charlene Molden in the office area, which is a secluded part of the Velvet Touch Lounge?

A: No I haven't.

Q: At any time in calendar year 1984, did you ever meet with her there?

A: No, not that I can recall. I don't ever recall her being in any office, my office.

Q: At the Velvet Touch Lounge.

A: At Jim's office? No, I don't remember her being in there either.

The indictment leading to renumbered Count 5, the second perjury count, asserted that at the same grand jury proceeding Strachan made a materially false statement "concerning a $7,000 cashier's check, check No. 99330 drawn on the Adams County Bank, made payable to Crown Masonary [sic]." That testimony was:

Q: How about any conversation with Charlene Molden?

A: I have never had a conversation with Charlene Molden about that check.

Q: Or the proceeds from the check?

A: That's correct.

This was the only count on which Strachan was convicted.

Applying the law to these facts, we must decide whether, as a matter of law, the jury could find that this testimony by Strachan was false, yet find that the necessary elements of the conspiracy charges had not been proven beyond a reasonable doubt.

### B.

■ The relevant elements of the conspiracy to commit bribery count are that (1) Strachan had the intent to promote or facil-

---

5. Frank Slechta, Jim Sloan, an individual named Jimmy Martinez, and the defendant formed a corporation. The corporation rented a building in which it started a hot tub business. Part of the building was sublet to Sloan and Martinez, who opened a bar in that space called the Velvet Touch Lounge.

itate bribery; (2) Strachan agreed with one or more persons to engage in bribery or attempt to do so; and (3) Strachan or a co-conspirator performed an overt act in pursuance of the conspiracy. The elements of conspiracy to commit compensation for past official behavior elements are that (1) Strachan had the intent to promote or facilitate compensation for past official behavior; (2) Strachan agreed with one or more persons to engage, or attempt to engage, in conduct constituting such compensation; and (3) Strachan or a co-conspirator performed an overt act in pursuance of the conspiracy.

To prove first degree perjury, the state must prove that Strachan (1) was in an official proceeding (2) under oath or authorized by law when he (3) knowingly made a false statement, which he did not believe to be true.

> The state argues that

> the perjury allegation for which the defendant was convicted is an act entirely distinguishable from the conspiracy in which the defendant was alleged to have been a participant. The fund of evidence from which the perjury is drawn is not (indeed, could not possibly be) "the same evidence" which was used to establish the conspiracy.

Reply Brief, at 2. We agree with this analysis. To find Strachan guilty of either of the conspiracy counts, the jury was required to find that between June and August 1984 Strachan had the intent to commit bribery or unlawful compensation, agreed with one or more persons to engage in or attempt the crime, and that Strachan or a co-conspirator performed an overt act in furtherance. In contrast, in order to convict Strachan of perjury the jury had to believe that Strachan knowingly made a false statement before the grand jury when he testified that he never had a conversation with Charlene Molden about a $7,000 cashier's check payable to Crown Masonry.

The verdict suggests that the jury believed that Strachan did have a conversation with Charlene Molden about a $7,000 cashier's check. Even if we accept this as true, the fact that Strachan may have had such a conversation with Charlene Molden does not prove that Strachan had the requisite intent to engage in a conspiracy, that he agreed to commit bribery or unlawful compensation, or that an overt act was performed in furtherance.

There was significant conflicting testimony at trial about possible explanations for Strachan receiving $7,000. Richard Reeser, a member of Thornton City Council, testified that Strachan told him he received money "for doing some construction work or earth moving work or something along that line." Charlene Molden testified that Kent "had hired Ron Strachan to do some heavy equipment work and some lobbying." Grand Jury Investigator Sexton testified that when Strachan appeared before the grand jury, he said he did "occasional labor" for Crown Masonry but that he "didn't do any heavy-equipment work, didn't do any campaigning, didn't do any lobbying, didn't do any work at all for Mr. Kent or the Winn group."

The jury apparently concluded that Strachan did have a conversation with Charlene Molden about the $7,000 check, although it is not clear whether the jury rejected Strachan's assertion that he did not receive such a check from Charlene Molden.

> At trial Strachan gave this testimony:
> Q: ... Did you ever get a check from Charlene Molden in 1984?
> A: No, sir; I did not.
> Q: Did you ever get a cashier's check for $7,000 from Charlene Molden in 1984?
> A: No, sir; I did not.

On cross-examination, this exchange took place:
> Q: Now, you had seen that [$7,000 cashier's] check before?
> A: Yes, sir.
> Q: And you saw it, as you've indicated, when you and Jim Sloan were together; is that correct?
> A: Yes, sir.
> Q: You were at the Velvet Touch when Mr. Sloan received that check?
> A: I was at the Velvet Touch. Jim had it with his deposits.

Strachan testified that his partner Jim Sloan received the check from Slechta. Sloan took the check to the bank and cashed it, explaining that he was cashing the check for Charlene Molden. Strachan also testified that he did not meet with Charlene Molden, although he had seen her at the Velvet Touch Lounge. "Charlene Molden and I are not very compatible.... There's just bad chemistry."

The test is whether the jury could find from the very same evidence that the element of perjury was present, while at the same time finding that an element of conspiracy was missing. *People v. Morgan*, 637 P.2d at 344. The trial court specifically ruled that "[i]f they find him guilty of perjury, he has to be guilty of one of the other two." We do not agree. Whether Strachan lied when he denied discussing a check with Charlene Molden does not, as a matter of law, prove that the elements of conspiracy to commit bribery or unlawful compensation were established beyond a reasonable doubt. The jury instruction on perjury included elements separate and distinct from elements of the conspiracy charges. *People v. Noble*, 635 P.2d 203, 212 (Colo.1981). From the testimony presented at trial, the jury could have determined that Strachan lied when he said he did not discuss the check with Molden. From the same testimony, however, the jury was not required to conclude that Strachan was guilty of the elements of the conspiracy counts. That the jury believed that this testimony was false does not establish beyond a reasonable doubt that Strachan had the requisite intent to establish conspiracy to commit bribery or unlawful compensation. A commonsense reading of the elements of the offenses shows that the evidence of perjury, which the jury apparently found persuasive, was certainly not adequate to prove that the defendant was guilty of conspiracy. The jury came to this conclusion, and we decline to find otherwise.

The *Robles* rule does not apply, but the rationale underlying that decision—that "[t]he very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the rob-

bery was the *only* evidence which could prove him guilty of conspiracy"—supports the result in this case. 160 Colo. at 301, 417 P.2d at 234 (emphasis in original). The evidence that the jury "apparently did not believe was sufficient" to prove conspiracy was not the same evidence, nor was it the only evidence that could prove Strachan guilty of perjury. We decline to hold that the jury's verdicts were inconsistent as a matter of law. Based on the elements of the crimes charged, the conflicting testimony, and the jury's right to assess the credibility of witnesses, we conclude that the trial court erred in entering a judgment of acquittal notwithstanding the verdict. We reverse the trial court's entry of a judgment of acquittal and remand the case for reinstatement of the jury's verdict and imposition of sentence.