The PEOPLE of the State of
Colorado, Petitioner,

v.

Lloyd SALDANA, Respondent.

No. 94SC329.

Supreme Court of Colorado,
En Banc.

June 26, 1995.

Rehearing Denied July 24, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Laurie A. Booras, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

In *People v. Saldana*, 92CA0504 (March 31, 1994) (not selected for official publication), the Colorado Court of Appeals vacated the defendant's judgment of conviction for distribution of a controlled substance. The court of appeals determined that because the jury had acquitted the defendant of the inchoate offense of conspiracy to distribute a controlled substance, his conviction for distribution of such a substance was inconsistent with the acquittal based on the evidence as presented. We conclude that under the holding of this court in *People v. Frye*, 898 P.2d 559 (Colo.1995), consistency of jury verdicts is not required in the circumstances present here, and that in any event the verdicts are not inconsistent. Accordingly, we reverse the judgment of the court of appeals.

I.

Lloyd Saldana was arrested on December 10, 1990, and was subsequently charged by information with unlawfully distributing cocaine [1] and conspiring with his uncle, Robert Rojo, to distribute cocaine.[2] The facts and circumstances surrounding Saldana's arrest

---

**1.** Section 18–18–105, 8B C.R.S. (1986); and § 12–22–310, 5A C.R.S. (1991).

**2.** Section 18–2–201, 8B C.R.S. (1986); § 18–18–105, 8B C.R.S. (1986); and § 12–22–310, 5A C.R.S. (1991).

were testified to by several witnesses at his jury trial, which commenced on November 20, 1991. Officer Kathryn Ann Foos, a police officer for the City of Arvada, testified that in November and December of 1990, she was working in an undercover capacity for the Drug Enforcement Administration's state and local task force and was assigned to purchase cocaine from Rojo. Foos was first introduced to Rojo when one of her informants purchased cocaine from him on November 9, 1990. Foos herself purchased cocaine from Rojo and his girlfriend on November 16, 1990.

On December 10, 1990, Foos contacted Rojo by telephone and negotiated for a purchase of cocaine from him. They agreed to meet at the Camelot Lounge on Pecos Street near the Boulder Turnpike at approximately 5:30 p.m., where Foos was to purchase an eighth of an ounce of cocaine for $250.00. Law enforcement officials gave Foos $250.00 in prerecorded money to purchase the cocaine and outfitted Foos with a radio transmitter that allowed them to monitor her activities and conversations while she was inside the Camelot Lounge.

Foos arrived at the Camelot Lounge at approximately 5:30 p.m. and saw Rojo at a pay phone. He instructed her to go back to the pool tables located inside the lounge and that he would meet her there. When Rojo and Foos met shortly thereafter at the pool tables, Rojo introduced Foos to a man named "Jack," later identified as Lloyd Saldana. At the time, Saldana was wearing a jacket with his name, "Lloyd Saldana," embroidered on the front. Foos, Rojo, and Saldana then proceeded to play several games of pool. Foos testified that during that time, Saldana and Rojo spoke generally about their respective pool games and the shots they were making.

Finally, Rojo asked Foos if she had brought the money and she replied that she had. Rojo then took Foos to an area in the back of the lounge, showed her a white box, and indicated that the box contained cocaine. Rojo and Foos then returned together to the

pool table. Foos then asked Rojo, "When do you want me to go do it?," to which he replied, "Go do it now." Foos testified that during this interchange, Saldana was from two to ten feet away and that she was unsure whether he could hear their conversation. Foos then returned to the area where the white box was located, retrieved a package from the box, and, because of the dimly lit surroundings, took the package into the women's bathroom to examine it more closely. She observed what appeared to be an eighth of an ounce of cocaine. She then returned to the white box, into which she intended to place the $250.00 in exchange for the cocaine. As she was about to place the money inside the box, she was approached by Saldana who said, "I'll take the money." In response to Foos's puzzled look, Saldana assured her that it was "O.K." Foos then returned briefly to the pool table area and shortly thereafter left the lounge after giving a prearranged arrest signal to other law enforcement officials waiting outside the lounge. Both Saldana and Rojo were arrested immediately. A police officer who searched Saldana found the $250.00 in prerecorded money in Saldana's pocket.

Saldana did not testify at his trial. However, his aunt, Irlinda Martinez, with whom Saldana had been living, testified that on the day in question, Saldana had returned from work to her home at approximately 4:00 p.m. After Saldana had showered and eaten dinner, Martinez drove Saldana to Rojo's home because on Monday evenings, Rojo and Saldana played together in a pool league. Martinez dropped Saldana off at Rojo's home at approximately 5:00 p.m.

Rojo also testified at Saldana's trial.[3] Rojo related that he had "used" his nephew and that Saldana knew nothing about the cocaine sale to Foos. Rojo testified that he owed Saldana about $200 for some work that Saldana had performed for him, and that while they were together in the Camelot Lounge, he told Saldana to retrieve the money from Foos.

---

**3.** Rojo had already pleaded guilty to distribution of cocaine based on the events of December 10, 1990, and was serving a five year sentence with the Department of Corrections at the time of his testimony.

At the close of the evidence, the trial court instructed the jury as to the elements of distribution of a schedule II controlled substance and of conspiracy as related to such distribution. The court also instructed the jury on complicity. The trial court gave the following instructions on each of the above-mentioned matters:

### Instruction No. 11

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed

2. Another person must have committed all or part of the crime

3. The defendant must have had knowledge that the other person intended to commit all or part of the crime

4. The defendant did intentionally aid, abet, or advise the other person in the commission or planning of the crime.

### Instruction No. 12

The elements of the crime of Distribution of a Controlled Substance, Schedule II, are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. distributed with or without renumeration [sic],

5. the Controlled Substance, Cocaine.

### Instruction No. 13

"DISTRIBUTE" means the actual, constructive, or attempted transfer, delivery, or dispensing to another of a controlled substance.

### Instruction No. 16

The elements of the crime of Conspiracy are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. with the intent to promote or facilitate the commission of the crime of Distribution of a Controlled Substance, Cocaine,

4. agreed with another person or persons that they, or one or more of them, would engage in conduct which constitutes Distribution of a Controlled Substance, Cocaine or an attempt to commit Distribution of a Controlled Substance, Cocaine, and

5. the defendant, or a person with whom the defendant conspired, has performed an overt act in the pursuance of such conspiracy.

After deliberations, the jury found Saldana guilty of the distribution offense, but acquitted him of conspiring with Rojo to distribute a schedule II controlled substance. The trial court sentenced Saldana to four years imprisonment with the Department of Corrections.

Saldana appealed his judgment of conviction to the court of appeals where he argued that the guilty verdict on the distribution offense was inconsistent with his acquittal on the conspiracy offense. The court of appeals agreed, with one panel member dissenting, and, in an unpublished opinion, set aside his conviction of distribution as inconsistent with his acquittal for conspiracy. *People v. Saldana*, 92CA0504 (Colo.App.1994). The court of appeals determined that "jury verdicts will not be reversed for inconsistency if the crimes charged require different elements of proof and if the jury could thus find from the same evidence that the element of one crime was present while the element of another charged crime was not." *Saldana*, slip op. at 2, citing *People v. Strachan*, 775 P.2d 37 (Colo.1989). Noting that the jury instructions required a finding that Saldana knowingly distributed cocaine in order to support a verdict of guilty on the distribution offense and a finding that he agreed with another person to distribute cocaine in order to establish guilt on the conspiracy offense, the court of appeals concluded as follows:

While we recognize that knowledge without agreement is possible, we cannot conclude, based upon the record before us and considering the evidence in the light most favorable to the prosecution, that such

could have occurred here. There was no prior communication between defendant and the purchaser of the cocaine and no evidence which linked defendant to the area of the bar where the cocaine was placed. Furthermore, the only evidence which might reflect defendant's knowledge that cocaine was being distributed was his acceptance of the money from the purchasing investigator after she had retrieved the drug.

Consequently, if defendant *knowingly* assisted in the scheme to distribute cocaine, he can only have done so based upon an agreement with his uncle. This, however, is inconsistent with the jury's conclusion that defendant did not enter into a conspiracy of agreement to commit the crime. And, if the defendant had not so agreed and was, as he claimed, merely collecting money owed him by his uncle, then he did not knowingly assist in the commission of a crime.

*Saldana,* slip op. at 3–4, emphasis in the original.

Judge Metzger dissented, concluding that the record contained no direct evidence that an agreement between Saldana and Rojo existed. Judge Metzger determined that the jury's conclusion that Saldana knew that Rojo was committing the crime of distribution was supported by evidence of Saldana's receipt of the money from Foos and his statement to Foos that " 'I'll take the money.... It's all right.' " *Saldana,* slip op. at 5 (Metzger, J., dissenting). Judge Metzger concluded that the evidence presented at trial supported the jury's verdicts. *Id.*

We granted certiorari on the petition of the prosecution to address the following two issues:

1. Whether the Court of Appeals erred in declining to follow *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), and its progeny, and holding that the defendant could attack his conviction on one count based on inconsistency with a verdict of acquittal on another count?

2. Whether the Court of Appeals applied an incorrect standard of review by holding that for the defendant to have been aware that his uncle was committing a sale of drugs, he must have entered into an agreement to participate in the offense?

## II.

We conclude that the defendant's judgment of conviction for distribution of cocaine, a schedule II controlled substance, is valid for two independently sufficient reasons. First, as we held in *People v. Frye,* 898 P.2d 559 (Colo.1995), consistency of jury verdicts is not required in cases such as this. Second, we agree with the dissenting opinion in the court of appeals that the verdicts in this case were consistent.

## A.

In *Frye,* 898 P.2d 559, we addressed the appropriate standard of review to be applied in inconsistent verdict cases. We elected to follow our prior decision of *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), and held that consistency in verdicts is unnecessary. *Frye,* 898 P.2d at 571. This holding mirrors the federal rule on inconsistent verdict challenges as set forth in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), a rule that has also been adopted by a majority of jurisdictions that have addressed this issue. *Frye,* 898 P.2d at 570 (consistency among verdicts on several counts of an indictment or information is unnecessary where a defendant is convicted on one or more counts but acquitted on others). Our holding in *Frye* was tempered by several limitations, such as the requirement that there must be sufficient evidence to support the guilty verdict, *id.,* and the *"Robles"* exception (prohibiting verdicts where a defendant is convicted of conspiring to commit a substantive offense and acquitted of that substantive offense, where the same evidence relied on to establish the conspiracy is the evidence that was found insufficient to establish the substantive offense). *Frye,* 898 P.2d at 570. Additionally, in *Frye,* we did not reach the issue of the proper resolution of a case where two guilty verdicts are legally incompatible. *Id.,* 898 P.2d at 569 n. 13.

After reviewing the record, we are convinced that the *Robles* exception is not applicable to this case, that we are not here

presented with the problem of legally incompatible guilty verdicts, and that sufficient evidence exists in the record to support the jury's verdict of guilt on the distribution offense. We therefore conclude that in accordance with *Frye,* consistency of verdicts is not required and the court of appeals erred in holding that Saldana could attack his conviction for distribution of a controlled substance on the ground that it is inconsistent with his acquittal on the conspiracy offense.

### B.

■ We also conclude, based on the evidence in this case, that the jury's verdict acquitting Saldana of conspiracy was not inconsistent with the verdict convicting him of distribution of a controlled substance. Here, there was no evidence presented to the jury of an agreement between Saldana and his uncle, Rojo. However, the evidence was unrefuted that Saldana accepted the money from Foos as her payment for the cocaine and that he reassuringly told her that it was "O.K." to give him the money, instead of giving it to Rojo. Additionally, after his arrest, the police authorities found the $250 in prerecorded money in one of Saldana's pockets.

At the close of the evidence, the jury was instructed as to the elements of conspiracy, distribution, and of criminal responsibility based on complicity. Based on the evidence presented to it, the jurors logically could have concluded that although Saldana had not agreed with Rojo to distribute the cocaine, he nonetheless acted as a complicitor—inferring from the evidence introduced at trial that Saldana knew Foos was in the process of purchasing drugs from Rojo and that he accordingly accepted the money on Rojo's behalf. As a complicitor, Saldana legally is guilty of the substantive distribution offense because he aided or abetted Rojo in committing the crime. *See People v. Wheeler,* 772 P.2d 101, 103 (Colo.1989); *People v. Thompson,* 655 P.2d 416, 418 (Colo.1982). Thus, the evidence permits an interpretation that Saldana had knowledge that Rojo intended to commit the crime of distribution of cocaine, and aided and abetted him by accepting the payment from Foos, but never agreed with Rojo to engage in criminal conduct. Under such an interpretation, Saldana would be guilty of distribution of cocaine as a complicitor but not guilty of conspiracy, the very conclusions reached by the jury.

### III.

We conclude that the verdicts here challenged are not factually inconsistent and that even if they were, consistency is not required under the holding of our decision in *Frye.* Accordingly, we reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of conviction previously vacated.