The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Christopher P. RODRIGUEZ,
Defendant–Appellant.

No. 86CA0286.

Colorado Court of Appeals,
Division 5.

Aug. 24, 1989.

Rehearing Denied Sept. 28, 1989.

Certiorari Denied Jan. 29, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Carlton & Jacobi, Diane Carlton, Denver, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Christopher P. Rodriguez, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, first degree sexual assault, aggravated motor vehicle theft, second degree kidnapping, robbery, conspiracy to commit first degree murder, conspiracy to commit second degree kidnapping, and conspiracy to commit aggravated motor vehicle theft. We affirm.

## I.

Defendant asserts that it was improper for one judge to preside during jury selection and another judge to conduct the remainder of the trial. We find no error.

■ Because the rule against substitution of judges is meant to insure that the judge who hears the testimony concerning the facts also applies the law thereto, there may properly be a substitution of judges in the preliminary stages of the trial before any evidence has been received. *Jones v. State,* 57 Ala.App. 275, 327 So.2d 913 (Ala. Crim.App.1975); Annot., 83 A.L.R.2d 1032 (1962).

■ Here, the substitution of judges occurred prior to the swearing in of the jury, and the second judge heard all the testimony and was completely familiar with the case. Defendant has not suggested any prejudice that could flow from this procedure; we conclude, therefore, that the substitution of judges that occurred was not improper.

## II.

Defendant also contends that he was deprived of due process of law by the time restrictions placed upon counsel to voir dire potential jurors. We disagree.

Because the People were seeking the death penalty, and thus each juror had to be death qualified, the court bifurcated the voir dire process. It first allowed the use of a one-page questionnaire and conducted an initial screening of those persons who believed they should be disqualified from serving on the jury. Several were dismissed for cause at that time.

The remaining potential jurors were divided into panels of 15 to 19, and counsel for each side was allowed 40 to 50 minutes to question each group. Although this questioning was for the purpose of inquiring of the prospective jurors about their views on the death penalty, the court did not disallow general questioning of the venire during this stage. Several other jurors were dismissed for cause during this questioning.

Thereafter, the remaining potential jurors were seated in the jury box and each side was allowed to examine the panel for an additional 50 minutes. On several occasions during this examination, individuals were examined privately in chambers and several members were excused for cause. Additional time for examination was allowed each time new members of the venire were seated to replace others who were removed for cause or peremptorily challenged. Altogether, this voir dire procedure consumed more than 30 hours over a period of four days; eventually 12 jurors and two alternates were seated.

The purpose of any jury voir dire is to determine whether a prospective juror has beliefs that would interfere with a party's right to receive a fair trial. *People v. Thornton,* 712 P.2d 1095 (Colo.App.1985), *rev'd on other grounds,* 716 P.2d 1115 (Colo.1986). The court, in the interests of judicial economy, "may reasonably limit the time available ... for voir dire examination," Crim.P. 24(a)(2), so long as it is conducted in a manner that will "facilitate an

intelligent exercise of challenges for cause and peremptory challenges." Crim.P. 24(a)(1); *People v. Heller*, 698 P.2d 1357 (Colo.App.1984), *rev'd on other grounds*, 712 P.2d 1023 (Colo.1986).

■ We conclude that the procedure adopted by the court here, including the time restrictions placed upon counsel, provided sufficient opportunity to examine the prospective jurors in a manner that would reveal any improper bias or prejudice; these procedures and restrictions did not, in our opinion, impinge upon defendant's intelligent exercise of challenges. Thus, the trial court did not abuse its discretion in using those procedures.

### III.

Defendant further contends that he was denied his right to a fair trial because the jury was death qualified. We disagree.

■ Disqualification of prospective jurors in a capital case for the inability to impose the death penalty is not error when the jury has the duty to apply the law impartially and to determine the defendant's innocence or guilt and his punishment if guilty. *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *People v. Drake*, 748 P.2d 1237 (Colo.1988).

We are not persuaded by defendant's argument that Colo. Const. art. II, § 16, affords more rights in this respect than does the Sixth Amendment on which it is based. Thus, we perceive no error arising out of the death qualification of the jury in this case.

### IV.

■ Defendant also complains that the trial court refused to enter an order authorizing his lawyer to speak with his brother, a co-defendant, although his brother was represented by counsel who refused to give his consent to such an interview. However, defendant has not demonstrated that the trial court had the authority to enter such an order, and in any event, the trial court's refusal to do so, under the circumstances portrayed by this record, did not constitute an abuse of that court's discretion.

### V.

■ Defendant further argues that the trial court's failure to grant his motion to suppress oral statements made by him to two police officers was prejudicial error even though those statements were not introduced into evidence. He claims that this ruling contributed to his decision not to testify because of the possible use of these statements for impeachment purposes. We do not agree.

There is nothing in the record to indicate that defendant would have testified even if the statements had been suppressed. Thus, any possible prejudice to defendant by the ruling is based on pure conjecture. Any defendant's decision not to testify seldom depends on a single factor. Therefore, a reviewing court cannot assume that an adverse ruling motivated the decision not to testify. *See People v. Wieghard*, 709 P.2d 81 (Colo.App.1985).

### VI.

■ We also find no merit in defendant's contention that the trial court abused its discretion in denying defendant's request to strike late witness endorsements by the prosecution.

Granting leave for late endorsement is not reversible error unless defendant shows prejudice because of surprise and lack of opportunity to interview the witness, and he makes a timely request for a continuance, which is denied. *People v. Bailey*, 191 Colo. 366, 552 P.2d 1014 (1976).

Here, defendant's request for continuance was granted, and he failed to show any improper prejudice resulting from the endorsements. Accordingly, we find no abuse of discretion in permitting the late endorsement.

### VII.

Next, defendant contends that it was error for the court to refuse his tendered

instruction on the affirmative defense of intoxication. We disagree.

In the absence of sufficient evidence to indicate intoxication, it is not error to refuse to submit a tendered instruction on that affirmative defense. *People v. Montez*, 197 Colo. 126, 589 P.2d 1368 (1979).

■ Although there was evidence presented here that defendant and his co-defendant had consumed some beer before the killing, there was no showing that either of them was intoxicated at the time of the commission of the crime. Thus, we find no error in the trial court's refusal of defendant's tendered intoxication instruction.

## VIII.

We agree with defendant's contention that the verdicts in the guilt phase of the trial were inconsistent with the special findings in the penalty phase, but we disagree that, as a result, the verdicts cannot stand.

■ During the penalty phase of the trial, the jury found that the prosecution had not proven the aggravating factor that "defendant intentionally killed a person kidnapped by him or anyone associated with him." *See* § 16–11–103(6)(d), C.R.S. (1986 Repl.Vol. 8A). Yet, defendant had previously been found guilty of first degree murder after deliberation, and this finding required proof that he intentionally caused the death of another. Therefore, the verdict returned in the penalty phase of the trial was inconsistent with this previous finding of the jury.

Relying upon *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966), the defendant argues that the jury's verdict returned in the penalty phase of the trial invalidated its earlier finding of guilty of the first degree murder charge. In *Robles*, the rule was adopted that acquittal of the substantive offense forecloses conviction of conspiracy to commit that offense if the only evidence to support the conspiracy conviction is that submitted to establish commission of the substantive offense. The *Robles* rule, however, is not applicable here.

The guilt and penalty phases of a trial are separate proceedings with different purposes. The guilt phase focuses on whether the prosecution has proven the statutory elements of an offense. During the penalty phase, the jury determines whether there are mitigating or aggravating factors relating to the defendant and the crime. The jury's findings in the penalty phase of a class 1 felony case resolve whether the defendant is to be sentenced to life imprisonment or to death. *See People v. Durre*, 690 P.2d 165 (Colo.1984).

The federal rule on inconsistent verdicts, first announced in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), and recently reaffirmed in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), is that, if the defendant is convicted on some counts but acquitted on others, the convictions will generally be upheld, irrespective of their rational incompatibility with the acquittals. This federal rule on inconsistent jury verdicts relies on the assumption that inconsistent verdicts merely reflect the jury's disposition to favor the accused by acting leniently in his behalf.

■ The same considerations are applicable here. Because the penalty phase of the trial of a capital offense involves a life or death decision by the jurors, it is more likely that considerations of lenity may enter into that decision than would be true in the guilt phase of that trial. The fact that lenity may be shown to defendant in the penalty phase should not, in our view, affect the validity of its previous decision upon defendant's guilt. *See United States v. Powell, supra.*

## IX.

We have also considered defendant's other claims of error and conclude that they lack merit.

Judgment affirmed.

METZGER and HUME, JJ., concur.