The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ronald S. FRYE, Defendant–Appellant.

No. 91CA2016.

Colorado Court of Appeals, Div. II.

Nov. 4, 1993.

Rehearing Denied Dec. 16, 1993.

Petition and Cross-Petition for Certiorari Granted May 9, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Patrick E. Meyers, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, CO State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge TAUBMAN.

Defendant, Ronald S. Frye, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of second degree sexual assault and menacing with a deadly weapon. He challenges only the latter conviction, and we affirm.

The victim testified that, after she had invited defendant into her apartment one evening, he pointed a gun at her head and ordered her to remove her clothes and perform vaginal, anal, and oral sex with him. She stated she complied out of fear of the gun pointing at her.

The victim further testified that, during the course of the assault, she turned up the stereo hoping to draw the attention of the security guard. Eventually, according to the victim, someone pounded on the door, and the defendant ordered her into the bathroom where he continued to assault her. Later, someone again pounded on the door. The defendant left the victim in the bathroom and returned in a few minutes fully dressed and apparently without the gun.

Thereafter, the police arrived, and when they looked in the bathroom window, the victim was able to signal them that she needed help.

In the questioning that resulted, the victim told the police that she had been raped and that the defendant had a gun. The police searched the defendant twice but did not find a gun; however, a gun that did not belong to the victim was found under a chair cushion in the living room.

Defendant was charged with first degree sexual assault, menacing with a deadly weapon, and four other crimes. At trial, the jury returned a verdict of not guilty on the first degree sexual assault charge and a verdict of guilty on the menacing with a deadly weapon charge. The jury also convicted the defendant of second degree sexual assault, a lesser included offense of first degree sexual assault.

In this appeal, defendant asserts that the verdict convicting him of menacing with a deadly weapon is inconsistent with the verdict acquitting him of first degree sexual assault. We disagree.

### A. Standard for Reviewing Inconsistent Verdicts

■ As noted by the People, there are two distinct lines of cases for evaluating inconsistent jury verdicts in Colorado. One derives from the holding in *Crane v. People*, 91 Colo. 21, 11 P.2d 567 (1932). The other line of authority has its genesis in *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966). The supreme court has acknowledged the existence of these two conflicting lines of cases in *People v. Badhawk*, 761 P.2d 753 (Colo.1988) (fn. 4) but, under the posture of that case, could not resolve the conflict since no transcripts had been provided.

The *Crane* line of cases gives substantial deference to the jury's fact finding and recognizes that inconsistent verdicts may stem from the jury's leniency toward the defendant. Accordingly, logical consistency of two convictions is not required for the verdicts to be upheld.

In contrast, the *Robles* line of cases requires a court to review the evidence before the jury to determine whether verdicts based on identical evidence are logically inconsistent.

The *Crane* court upheld a jury verdict convicting the defendant of conspiracy despite the defendant's acquittal on the charges of obtaining money by means of false pretenses. Consistent with *Crane*, and relying upon the similar, more recent U.S. Supreme Court holding in *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), a division of this court, in *People v. Rodriguez*, 786 P.2d 472 (Colo.App.1989), affirmed a murder conviction despite inconsistent findings by the jury at sentencing. In doing so, the panel remarked that inconsistent convictions will "generally be upheld, irrespective of their rational incompatibility with the acquittals" because of the assumption that inconsistent verdicts are the result of the jury's disposition to favor the accused by acting

leniently in his or her behalf. *People v. Rodriguez, supra,* at 475.

However, in *Robles v. People, supra,* the supreme court reversed a conviction of conspiracy where the defendant had been acquitted of robbery. It noted that: "[T]he very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the robbery was the only evidence which could prove him guilty of conspiracy." Nevertheless, in *Robles,* the supreme court did not expressly overrule the *Crane* line of cases.

The People argue we should follow *Crane* and *Rodriguez.* We disagree.

The *Rodriguez* holding is limited to the factual situation it addresses. There, in a capital punishment case, the jury found the defendant guilty of first degree murder but, during the penalty phase, did not find the aggravating factor that the defendant had intentionally killed a person he had kidnapped. The defendant argued that application of *Robles* required invalidation of his conviction of first degree murder.

Declaring that *Robles* was inapplicable, the court concluded that *United States v. Powell, supra,* was the applicable standard and affirmed the judgment of conviction on an inconsistent guilty verdict. The court reasoned that, since the penalty phase involved a consideration of aggravating factors which would determine whether the defendant would be sentenced to life imprisonment or death, the jury was likely to be lenient toward the defendant. Thus, *People v. Rodriguez* is distinguishable from the situation here.

Moreover, we conclude that *People v. Robles, supra,* is still good law. Decided more recently than *Crane,* it has not been overruled or disavowed in any way by the supreme court. Indeed, *Robles* could be construed as implicitly overruling *Crane,* as the dissent in *Robles* contended.

Furthermore, to the extent *United States v. Powell, supra,* is inconsistent with *Robles,* Colorado courts are not bound to follow it. As one of the dissenting justices in *Crane* concluded:

Within their respective spheres the supreme court of Colorado and the supreme court of the United States are equally powerful. Each, I presume, should respect the views and decisions of the other. In some circumstances our judgments may be reversed by those of that tribunal; in others that court is as bound by what we have held as courts of inferior jurisdiction in this state are bound.

*Crane v. People, supra,* 91 Colo. at 35, 11 P.2d at 572 (Hilliard, J., dissenting).

Finally, to the extent that *United States v. Powell, supra,* is applicable, it is arguably distinguishable since the court there concluded that: "[N]othing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other." *United States v. Powell,* 469 U.S. at 69, 105 S.Ct. at 478, 83 L.Ed.2d at 471. This is essentially defendant's contention here.

Accordingly, we hold that *Robles* applies, and thus, we must determine whether the jury verdicts here are inconsistent under the *Robles* test.

### B. Application of *Robles* to the Present Case

██ Defendant maintains that his acquittal of first degree sexual assault is inconsistent with the conviction of menacing with a deadly weapon. He argues that his conviction for menacing with a deadly weapon must be reversed since the jury could not have convicted him of this charge under evidence different from that used to acquit him of first degree sexual assault. We disagree.

██ The test for assessing inconsistency in jury verdicts is whether the jury had to rely on identical evidence in producing two apparently inconsistent conclusions. *People v. Quinn,* 794 P.2d 1066 (Colo.App.1990). Appeals raising issues concerning alleged inconsistencies of multiple jury verdicts usually require thorough analysis by the appellate court of the evidence presented at trial. *People v. Badhawk, supra.*

A person commits the crime of felony menacing if, by the use of a deadly weapon, he

or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Section 18–3–206, C.R.S. (1986 Repl.Vol. 8B).

Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if the actor causes submission of the victim through the actual application of physical force or physical violence, or the actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats. Section 18–3–402, C.R.S. (1986 Repl.Vol. 8B).

Second degree sexual assault is a lesser included offense of first degree sexual assault. A person commits second degree sexual assault if that person knowingly inflicts sexual penetration on the victim and causes submission by means of sufficient consequence reasonably calculated to cause submission against the victim's will but not by means listed under the first degree sexual assault statute. Section 18–3–403(1)(a), C.R.S. (1986 Repl.Vol. 8B).

Here, the record reflects that after the sexual assault, defendant left the victim in the bathroom while he got dressed. After he returned, the victim heard knocking on her apartment door. Shortly thereafter, the police took the screen off the bathroom window, pulled the curtain aside, and shined a flashlight into the apartment. While defendant was looking at the police, the victim waived her arms and mouthed the word "help." She testified that, as she did so, she was afraid that there would be shooting because she knew defendant had a pistol. Indeed, the victim stated that she was fearful because defendant had said when returning to the bathroom, "I don't want to hurt nobody [sic], but I will if I have to protect myself." The victim testified that she thought defendant was actually going to use the pistol against the police.

Defendant argues that these circumstances could not have formed the basis for the felony menacing conviction because when defendant returned dressed to the bathroom, the victim did not see the gun. Thus, defendant argues, since the victim testified she did not see a gun, defendant could not have been convicted of felony menacing which requires threats "by the use of a deadly weapon." We disagree.

The supreme court has interpreted the phrase "by the use of a deadly weapon" broadly. For example, in *People v. Hines*, 780 P.2d 556 (Colo.1989), the court held that the term "use" in § 18–3–206 includes the act of holding the weapon in the presence of another in a manner that causes the other person to fear for his or her safety. *Cf. People v. Adams*, 867 P.2d 54 (Colo.App. 1993). We conclude that, under the circumstances presented here, the term "use" is also broad enough to have allowed the jury to convict the defendant properly of felony menacing.

The defendant held the gun to the victim's head during a three-hour sexual assault. At the end of that period, the victim testified that she was still in fear of "imminent serious bodily injury," even though she did not then see defendant with the gun. Since the gun was concealed when defendant first entered the apartment and since defendant had dressed before returning to the bathroom, it was plausible for the jury to believe that the defendant still had the gun in his possession, though concealed, when he returned to the bathroom after the assault.

Moreover, given the circumstances of the sexual assault, the victim could reasonably believe, and the jury could reasonably infer, that when defendant returned to the bathroom he had ready access to the gun and, therefore, could "use" it to induce fear in the victim, even though it was not then visible to her.

Under *Robles v. People, supra*, the evidence supporting the felony menacing charge must be different than that relied upon by the jury for the sexual assault conviction. We conclude that such distinctive evidence is present.

As noted above, the jury could find that defendant "used" the gun to threaten serious injury even after the sexual assault had ended and the two were present in the bath-

room. Thus, the circumstances in this case are distinguishable from those in *Robles v. People, supra,* and the verdicts are not inconsistent.

The judgment of conviction for felony menacing is affirmed.

NEY, J., concurs.

TURSI, J., concurs in part and dissents in part.

Judge TURSI concurring in part, and dissenting in part.

I concur in part and dissent in part.

I concur in the majority's holding on the standard to be applied for reviewing inconsistent verdicts and the application of that standard to this case. However, I dissent from the holding that there is independent evidence to sustain the conviction for menacing with and without a deadly weapon.

Here, the jury was instructed on sexual assault in the first degree, as well as two lesser included offenses, and on menacing with and without a deadly weapon.

The charge of sexual assault in the first degree, as pertinent here, provides that an actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree and that sexual assault in the first degree is a class 2 felony if the actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim. Section 18–3–402, C.R.S., (1986 Repl.Vol. 8B). The count on menacing, as relevant here, provides that one commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury and that, if such menacing is committed by the use of a deadly weapon, it is a class 5 felony. Section 18–3–206, C.R.S. (1986 Repl.Vol. 8B).

The jury concluded that there was insufficient proof of the charge that defendant caused submission of the victim by use of a deadly weapon. Nevertheless, even though the sole evidence tending to show use of a deadly weapon went to the sexual assault charge, the jury found the defendant not guilty of using a deadly weapon in the sexual assault but found him guilty of the use of a deadly weapon in the menacing charge.

The People suggest that we find sufficient evidence necessary to sustain a conviction of menacing with a deadly weapon beyond a reasonable doubt because of defendant's statement that: "I don't want to hurt nobody, but I will if I have to protect myself." This, I cannot in good conscience do. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

Even if the question of irreconcilable verdicts were not an issue here, I find absolutely no evidence in the record to sustain a finding that at the time defendant made the statement relied upon by the People that he used a weapon or that he directed the threat to the victim. Therefore, I must reject the People's argument that we sustain the verdict because it is possible to conclude that the jury did not rely on identical evidence.

A jury may not find, nor may this court sustain, a verdict without evidentiary support or one that is based on mere speculation and conjecture. To do so here one would need to infer that it was possible that the defendant did have a gun on his person when he made the questioned statement and that possibly he used a gun secreted on his person for the purpose of knowingly putting the victim in fear of imminent serious bodily injury.

Therefore, I would reverse the judgment based on the verdict finding defendant guilty of menacing with a deadly weapon.