The PEOPLE of the State of Colorado, Petitioner/Cross–Respondent,

v.

Ronald S. FRYE, Respondent/Cross–Petitioner.

No. 94SC31.

Supreme Court of Colorado, En Banc.

June 26, 1995.

Rehearing Denied July 24, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for petitioner/cross-respondent.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for respondent/cross-petitioner.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. Frye*, 872 P.2d 1316 (Colo.App. 1993), which affirmed the judgment of conviction of Ronald S. Frye for the crimes of second degree sexual assault and menacing with a deadly weapon. The court of appeals concluded that according to *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966), consistency of verdicts is required for convictions to be upheld on appellate review but that the jury's verdict finding Frye guilty of menacing with a deadly weapon was consistent with the verdict acquitting him of first degree sexual assault. We conclude that consistency of verdicts is *not* required. Accordingly, although our rationale differs from that of the court of appeals, we affirm the judgment of that court.

I.

Because consistency of verdicts is at issue here, we set forth the evidence in some detail.

On the evening of February 25, 1991, Ronald S. Frye, a twenty-one-year-old man who had recently moved from Chicago, Illinois, to Denver, Colorado, was arrested for allegedly sexually assaulting a woman in her apartment. He was subsequently charged with first degree burglary,[1] second degree burglary,[2] sexual assault in the first degree,[3] and

---

1. § 18-4-202, 8B C.R.S. (1986).

2. § 18-4-203, 8B C.R.S. (1986).

3. § 18-3-402, 8B C.R.S. (1986).

menacing with a deadly weapon.[4] He was also charged with two counts of mandatory sentencing for a crime of violence.[5] Frye gave notice to the prosecution that he generally denied the charges and intended to assert the affirmative defense of consent to the allegedly illegal acts.

Frye's jury trial began on August 12, 1991, in the Arapahoe County District Court. The first person to testify for the prosecution was the alleged victim.[6] Doe, a twenty-year-old woman, testified that she had moved to the Denver area in November of 1990 from Pueblo, Colorado, where she had been living with her parents. She further testified that she had rented a one bedroom apartment on the third floor of an apartment complex on South Dahlia Street that she shared with a roommate. The living room of the apartment had a large window that looked out onto the walkway in front of the apartment and into the courtyard area of the apartment complex.

Doe testified that on the evening of February 25, 1991, at approximately 8:40 p.m., she was alone at home and engaged in a long-distance telephone conversation in the living room of her apartment when she saw a man, later identified as Ronald S. Frye, walk in front of her apartment window. She waved her hand at Frye, who stopped and waited until she had completed her telephone conversation, a period of approximately fifteen minutes. Doe said that she had motioned to Frye because she was new to Denver and was hoping to meet a friend. She noticed that he had two liquor bottles in his hand and that he set the bottles on the ledge in front of her apartment and watched her until she hung up the telephone and opened the front door.

Doe further testified that after she opened the front door, she and Frye chatted for approximately five minutes. Frye said something to the effect of "You must be awful good looking to have me wait so long," to which Doe did not respond. Doe then invited Frye into her apartment. Frye set the two liquor bottles on the floor and sat down in a chair near the front door. Doe sat down at the foot of an adjacent pull-out sofa bed[7] and she and Frye shared Frye's one remaining cigarette.

Doe then turned on her stereo, after which Frye moved from the chair in which he had been sitting and sat down next to Doe on the sofa-bed. The two continued to converse and Frye attempted to put his arm around Doe, but she again stood up to adjust the music on her stereo. Frye stated that he was worried about being seen by some gang members and went to the window and closed the curtains. Both Doe and Frye sat back down on the sofa-bed and the two talked for a while longer. Frye indicated that he was intending to obtain some marihuana later that night, and Doe said she would be interested in some.

Although Doe could not remember precisely how many times she rose from the sofa-bed, she testified that while sitting next to Frye, he leaned over and tried to kiss her and at the same time "just rolled himself" on top of her. She further testified that Frye reached for something at his back with his right arm, pulled out a pistol, and held it to her left temple. Frye ordered her to remove her pants, underpants, and shoes, and then raped her while pointing the gun at her left temple.

Doe further testified that after a period of time, she yelled for help but that no one heard her. Frye told her to shut up. Doe stated that over the next three hours, Frye repeatedly raped her vaginally, anally, and orally, in various parts of the apartment, including on the kitchen counter and the living room floor and in the bathroom. Doe stated that throughout the ordeal, Frye kept the gun pointed at her head.

4. § 18–3–206, 8B C.R.S. (1986).

5. § 16–11–309, 8A C.R.S. (1986 and 1994 Supp.).

6. We refer to the alleged victim and complaining witness as "Doe" in the interest of minimizing intrusion on her privacy.

7. Doe testified that the sofa-bed was unfolded at the time Frye entered her apartment. She stated that it was kept unfolded all of the time because that was where she slept regularly and she was "too lazy to put it up" after sleeping in it.

Doe testified that, at one point, while she was being sexually assaulted on the floor of the living room next to where the stereo was located, she reached up and turned the volume of the music on to its fullest extent, hoping to trigger a noise complaint and arouse the attention of the apartment complex's security guard. Sometime thereafter, Doe heard a knocking on the door and thought that it was the security guard. She asked Frye if she could turn down the volume on the stereo and he said "no." She then asked him if she could answer the door. Frye asked whether she was expecting anyone, to which she replied "no." Frye refused to allow Doe to answer the door and continued sexually assaulting her on the sofa-bed.

Sometime later, Doe and Frye again heard knocking on the door. Doe testified that she thought it was the police authorities in response to the continued loud music from her stereo. When the knocking persisted, Frye ordered Doe into the bathroom, where he forced her to perform oral sex while pointing the gun at her head. He asked her if she had a boyfriend and she replied falsely that she did.

Doe stated that she finally convinced Frye that she had to urinate and he left the bathroom and got dressed. He then returned to the bathroom, wearing his clothes, and began fixing his hair. Doe did not see the gun at that time. Frye told Doe something to the effect of "I don't want to hurt nobody, but I will if I have to protect myself." While Doe was seated naked on the toilet, several police officers removed the screen from the apartment window, drew back the curtain, and shined a flashlight inside. The officers asked Frye if everything was all right. While Frye was speaking to the officers and stating that everything was fine, Doe was gesturing to the officers and mouthed the word "help" in a manner so that Frye could not see or hear her. The police officers asked Frye to open the front door of the apartment and Doe ran into the bedroom. After entering the apartment, one of the police officers went into the bedroom where Doe was waiting. Doe informed the officer that Frye had just raped her and that he was armed with a gun.

Steven Poindexter, the security guard at the apartment complex where Doe resided, was the next person to testify for the prosecution. He stated that on the night in question, he had heard loud music from a stereo emanating from Doe's apartment. He testified that he first knocked on the door at 11:00 p.m., received no answer, and then returned at 11:30 p.m. and knocked again. When no one responded the second time, Poindexter returned to his office and called the police because he thought someone was home and that something might be wrong.

Poindexter returned to Doe's apartment with three police officers at approximately midnight. One of the officers knocked on the door with his flashlight. When no one responded, the officers asked Poindexter for permission to remove the screen from the apartment window, to which he agreed. According to Poindexter, when the officers removed the screen and looked inside with the aid of the flashlight, they saw Doe sitting naked on the toilet and Frye putting on his shirt. Poindexter testified that Doe appeared to be extremely upset, that she had her head down, and that she was crying. He later saw her being escorted out of the apartment complex by paramedics, staggering as though she was hurt in some way and crying.

James Dillon, of the Glendale Police Department and one of the officers who responded to Poindexter's call, also testified for the prosecution. Dillon stated that after they entered the apartment, he saw Doe emerging from the bathroom and entering the living room—hunched over in an attempt to cover herself. Dillon testified that Doe waved her arms at him to attract his attention and that she mouthed the word "help." Dillon stated that Doe appeared scared and that she was shaking; he followed her into the bedroom where Doe tried to speak but her voice was inaudible. He further testified that Doe continued to back into the bedroom, all the way into the back of the closet before she was able to say that she had just been raped. Doe told Dillon that she did not know Frye and that he was armed. Dillon returned to the living room of the apartment where he conducted a "pat down" of Frye for weapons. Dillon did not find a weapon, and

one of the other officers, Paul Bloomfield, returned to the bedroom to speak to Doe while Dillon waited with Frye. When Bloomfield returned, Dillon conducted another pat down search of Frye but again did not find a weapon. He then handcuffed Frye and took him to the Glendale Police Department.

Several other Glendale law enforcement officials arrived at Doe's apartment to assist Officer Bloomfield. One officer found a gun hidden between the cushions of the chair near the front door where Frye had sat upon entering the apartment. The officers then collected other items from the apartment that they thought might have some evidentiary value and waited for the paramedics to arrive to take Doe to the hospital.

Doe was taken to University Hospital in Denver where she was examined by medical professionals. Relevant samples were collected from Doe and given to a Glendale police officer who was waiting at the hospital. Hair, blood, and saliva samples were taken from Frye while he was in custody at the Glendale Police Department. The prosecution presented evidence of the results of the various tests and of the examination of the weapon found at the scene.

The final witness to testify at the trial was Detective Thomas Matthew Bruce of the Glendale Police Department. Bruce testified that on the evening of Frye's arrest, he and two other officers interviewed Frye while he was in custody at the Glendale Police Department. After Frye was advised of his right not to answer questions while in police custody, he explained that he had passed by Doe's apartment window when he saw her talking on the telephone. Frye stated that Doe gestured to him, as if to say "wait a minute," which he did. Frye further explained that after opening her apartment door and chatting with him, Doe let him into the apartment, where the two proceeded to have consensual sexual intercourse. When questioned about his use of the gun, Frye initially denied that Doe had ever seen it. When told by Bruce that Doe could identify and de-

scribe the gun in some detail, Frye then stated that Doe may have seen the gun in his back pants pocket and that he had removed the gun from his rear pocket when he first heard someone knocking on the door. Detective Bruce also tested Frye's blood alcohol level and found that it was .081 at 2:00 a.m.

The case was submitted to the jury, and the jurors were instructed that Frye had been charged with committing the crimes of first degree burglary, second degree burglary, sexual assault in the first degree, and menacing. The court delivered the instructions to the jury and in instruction number 14, concerning first degree sexual assault, described the offense as follows:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. inflicted sexual penetration on a person, and
5. caused submission of that person,
6. through the actual application of physical force, physical violence,

or

7. (a) by threat of imminent death, serious bodily injury, extreme pain, or kidnapping to be inflicted upon anyone, and

   (b) the person submitting believed the defendant had the present ability to execute the threat,

8. without the affirmative defense [of consent].

The trial court also instructed the jury by instruction number 15 as to the elements of menacing with a deadly weapon:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. by threat or physical action,
4. knowingly placed or attempted to place another person in fear of imminent serious bodily injury,
5. by the use of a deadly weapon.[8]

8. The trial court also instructed the jury on the offense of menacing without a deadly weapon, the elements of which are identical to menacing with a deadly weapon except that the former offense does not involve the use of such a weapon.

The trial court further explained that should the jury find Frye not guilty beyond a reasonable doubt of any offense charged, that he may be found guilty of any lesser included offense. The trial court in instruction number 16 explained that the offense of first degree sexual assault includes the lesser offense of second degree sexual assault, and described the offense as follows:

1. [T]hat the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly inflicted sexual penetration on a person, and
4. caused submission of that person
5. by any means of sufficient consequence,
6. reasonably calculated to cause submission against that person's will.
7. without the affirmative defense [of consent].

During deliberations, the jury sent a number of written questions to the trial court judge, requesting clarification of several of the above-described jury instructions. The first question was as follows:

Jury Question # 1

Can we conclude, in terms of the sexual assault charge, that concent [sic] may initially be given, and then later may be withdrawn.

Can we conclude that when concent [sic] is withdrawn a crime was comitted [sic].

Can we conclude that if concent [sic] is given for vaginal sex but not for anal sex, that the commission of anal sex constituted a sexual assault, as charged.

The trial court provided the jury with the following answer:

You have received all of the instructions of law that you may properly use to decide this case. No further instructions as to questions you have raised may be given.

The jury also requested copies of Frye's statement given to Detective Bruce on the night of the alleged assault and copies of Doe's medical reports from University Hospital, or the court transcripts regarding the medical reports and Detective Bruce's testimony. The trial court responded by stating in writing to the jury that "[y]ou have received all of the evidence that you may properly use to decide this case. No further evidence may be submitted to you."

On returning to the courtroom after deliberations, the jury returned verdict forms that revealed that the jurors could not reach agreement as to the first or second degree burglary charges. However, the jury found Frye guilty of sexual assault in the second degree and menacing with a deadly weapon. The jury inferentially found the defendant not guilty of first degree sexual assault. The trial court subsequently sentenced Frye to sixteen years in the Department of Corrections for second degree sexual assault and eight years for menacing with a deadly weapon, the sentences to run consecutively.

Frye appealed the judgment of conviction to the court of appeals where he challenged the jury's verdict finding him guilty of menacing with a deadly weapon. Frye maintained that the verdict of guilty as to that charge was inconsistent with the verdict acquitting him of first degree sexual assault. The court of appeals majority noted, as an initial matter, that the appropriate standard for reviewing a claim of inconsistent verdicts was that set forth in *Robles v. People,* 160 Colo. 297, 301, 417 P.2d 232, 234 (1966) (reversing a conviction of conspiracy where "[t]he very same evidence which the jury apparently did not believe was sufficient to prove the defendant participated in the robbery was the *only* evidence which could prove him guilty of conspiracy" (emphasis in original)), and not the standard adopted in *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932) (holding that consistency in verdicts is unnecessary), a standard that was recently reaffirmed by the United States Supreme Court in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). *Frye,* 872 P.2d at 1318. The court of appeals determined that *Robles* was decided more recently than *Crane* and thus could be interpreted as implicitly overruling *Crane.* *Id.* The court of appeals also determined that Colorado courts are not bound to follow the *Powell* decision and found *Powell* to be "arguably distinguishable" in any event. *Id.*

In response to Frye's argument that his conviction for menacing with a deadly weapon was inconsistent with his acquittal of first degree sexual assault, the court of appeals determined that according to *Robles,* the evidence supporting the felony menacing charge must be different than that relied on by the jury for the sexual assault conviction. *Id.* The court of appeals concluded that such was the case here and that the two convictions therefore were not inconsistent. *Frye,* 872 P.2d at 1319–20. The court determined that the jury could have found that when Frye returned to the bathroom, fully clothed but without his gun, he nonetheless had "ready access to the gun and, therefore, could 'use' it to induce fear in [Doe], even though it was not then visible to her." *Frye,* 872 P.2d at 1319. Thus, because Frye potentially could have "used" his gun to threaten serious injury even after the sexual assault had ended and the two were present in the bathroom, the court of appeals concluded that separate evidence supported each of the jury's verdicts, as required by *Robles,* and that the verdicts therefore were not inconsistent. *Frye,* 872 P.2d at 1319–20.

Judge Tursi concurred in part and dissented in part. Judge Tursi agreed with the majority that the controlling standard was that articulated in *Robles,* but concluded that there was no independent evidence to sustain Frye's conviction for menacing with a deadly weapon. *Frye,* 872 P.2d at 1320 (Tursi, J., concurring in part and dissenting in part).

The prosecution sought certiorari review of that part of the court of appeals' decision holding that *Robles* is the controlling standard in inconsistent verdict cases, and Frye cross-petitioned for certiorari to review that portion of the decision holding that the two verdicts were not inconsistent. We granted certiorari on the following two issues, the first of which is based on the prosecution's petition and the second on Frye's cross-petition:

1. Whether the court of appeals erred in declining to follow *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), and its progeny, and holding instead that under *Robles v. People,* [160] Colo. 297, 417 P.2d 232 (1966), the defendant could attack his con-

viction on one count on the ground that it is inconsistent with a verdict of acquittal on another count.

2. Whether the court of appeals erred in holding that the jury did not render inconsistent verdicts based on the same evidence, when it acquitted the defendant of first degree sexual assault despite convicting him of felony menacing.

## II.

### A.

■ Frye maintains that the jury's verdict of guilty on the charge of menacing with a deadly weapon should be vacated because it is inconsistent with the verdict acquitting him of first degree sexual assault. After reviewing the record, we conclude that only by a most strained analysis could the two guilty verdicts be held to be consistent.

If the jury had believed that Frye used a gun to cause Doe's submission, it would logically have found him guilty of first degree sexual assault. *See* jury instruction no. 14, pars. 6 and 7, *supra* at p. 10. Therefore, a verdict of not guilty of first degree sexual assault but guilty of second degree sexual assault suggests that the jury found that Frye did not use a gun to cause Doe to submit. Such a finding would be at odds with the guilty verdict for menacing with a deadly weapon because there is no evidence that Frye used the gun other than in the course of the sexual assault.

When Doe testified at trial, she stated that Frye held a gun to her head throughout the duration of the sexual assault, indicating that the gun was not used for any other reason or at any other time than during the sexual assault. The evidence also revealed that the police authorities found a gun not belonging to Doe at Doe's apartment shortly after the sexual assault.

For reasons unknown to us, the jury chose not to believe Doe's testimony that Frye used a gun to cause her submission to the sexual assault. However, in the face of irrefutable evidence that a gun was found at the apartment, the jury convicted Frye of menacing with a deadly weapon. The court of

appeals' conclusion that the two guilty verdicts were not inconsistent is unpersuasive and results in the kind of speculation into a jury's thought processes that courts generally eschew. Thus, although in the past we have made every effort to find consistency in jury verdicts, such an effort could be rewarded here only if we were to accept as an explanation the highly unconvincing and artificial possibility that the jury believed the menacing occurred only after Frye returned to the bathroom fully clothed and with no gun visible to Doe after the sexual assault had terminated. The menacing would have been predicated entirely on Frye's statement that "I don't want to hurt nobody, but I will if I have to protect myself," taken together with evidence that Doe knew Frye had access to a gun. Therefore, to find consistency in the verdicts, we would have to conclude that the jury disbelieved Doe's repeated and consistent testimony that Frye held a gun to her head during the sexual assault but believed that by the quoted statement, Frye placed or attempted to place Doe in fear of imminent serious bodily injury by use of the gun which was not visible to her at the time. We reject such an implausible explanation and conclude that the verdicts are indeed inconsistent.

## B.

We thus find ourselves directly confronted with the issue of the appropriate standard of review to be applied in inconsistent verdict cases. Frye contends that this court should adhere to the principle, enunciated in *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966), that prohibits inconsistent jury verdicts that are based on identical evidence. By contrast, the prosecution maintains that according to *Crane v. People*, 91 Colo. 21, 11 P.2d 567 (1932), logical consistency of two verdicts is not required for those verdicts to be upheld

on appeal. We must address and resolve the conflict in Colorado law represented by the two lines of cases—one descended from *Crane*, the other from *Robles*.

A review of previous decisions of this court is necessary to describe the differing approaches we have taken in addressing the issue of inconsistent jury verdicts.[9] In *Crane v. People*, 91 Colo. 21, 11 P.2d 567, (1932), this court expressly overruled *Webb v. People*, 83 Colo. 1, 262 P. 906 (1927) (a conviction inconsistent with a simultaneous acquittal evidenced reversible error), and held that dismissal of or acquittal on various counts of the same indictment did not preclude conviction on others, even though the various counts apparently charged substantially the same offense in different language. In *Crane*, the defendants were indicted on an eleven count information. At the close of the prosecution's evidence, the government withdrew six of the counts; the jury returned verdicts of guilty on the second count for conspiracy to obtain money by means of false pretenses and not guilty on the remaining four similar counts. On appeal, the defendant argued that the verdicts of not guilty on the four counts were inconsistent with the guilty verdict on the second count. We disagreed, stating that such inconsistent verdicts were perhaps the product of "the well known and repeatedly approved practice of prosecutors to charge the same offense in varying language in separate counts of the same information" so as to meet variations in the evidence introduced at trial and to avoid the necessity for a bill of particulars. *Crane*, 91 Colo. at 27, 11 P.2d at 569. The jury's resulting "inconsistent" verdicts likely reflected the jury's conclusion that because it had convicted the defendant on one of the charges, that same defendant should not be punished twice for essentially the same of-

9. "'Inconsistency' is generally understood to mean some logical impossibility or improbability implicit in the jury's findings as to the various counts of the indictment or information. It may arise from factual considerations, as where the jury finds under one count that defendant did not possess illegal liquor but under another that he sold it, or from legal considerations, as where multiple verdicts of guilty are returned under counts charging both the theft and receipt of the

same stolen property." W.E. Shipley, Annot., *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information*, 18 A.L.R.3d 259, 287 (1968) (internal reference citations omitted).

This case involves the 'factual inconsistency' between the jury's verdict convicting Frye of menacing with a deadly weapon and its verdict acquitting him of first degree sexual assault.

fense, so that the jury acquitted on the remaining counts. *Id.* Adopting the reasoning and holding of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932),[10] we held in *Crane* that consistency in verdicts is not necessary. *Crane*, 91 Colo. at 24–25 and 28, 11 P.2d at 569.

The *Crane* rule was applied in a number of subsequent decisions that similarly gave deference to the jury's fact finding authority and recognized that inconsistent verdicts may stem from the jury's leniency toward the defendant. *Elstun v. People*, 104 Colo. 302, 91 P.2d 487 (1939) (where underlying conspiracy and criminal transaction was the same as to parties, time, place, and evidence and jury finds defendant guilty on one count of the information but not guilty on remaining two counts, court will not overturn inconsistent jury verdicts and must adhere to the rule announced in *Crane* ); *Starr v. People*, 113 Colo. 268, 157 P.2d 135 (1945) (rejecting argument that conspiracy conviction must be reversed because acquittal of substantive offense of embezzlement was inconsistent with conviction of conspiracy to commit embezzlement, and adhering to the rule announced in *Crane* that verdicts need not be consistent); *People v. Rodriguez*, 786 P.2d 472 (Colo.App. 1989) (inconsistent verdicts in guilt and penalty phases of first degree murder trial did not invalidate guilty verdict).

However, in *Robles v. People*, 160 Colo. 297, 417 P.2d 232 (1966), this court departed from the rule established in *Crane*, without explanation or citation to *Crane* or other authority.[11] In *Robles*, the defendant was charged with robbery with a dangerous weapon and conspiracy to commit robbery with a dangerous weapon. The jury acquitted the defendant on the robbery charge but found him guilty of conspiracy, even though the only evidence of the conspiracy was the robbery itself. On appeal, we held that an acquittal of a substantive offense forecloses conviction of conspiracy to commit that same offense if the same evidence relied on to establish the conspiracy is the evidence that was found insufficient to establish the substantive offense. *Robles*, 160 Colo. 297, 301, 417 P.2d 232, 234.[12] Accordingly, in *Robles*, we reversed the defendant's conviction for conspiracy. *Robles*, 160 Colo. at 301, 417 P.2d at 234. *See also People v. Way*, 165 Colo. 161, 437 P.2d 535 (1968) (same facts and holding as *Robles* ).

Although the holding in *Robles* was limited to conspiracies established solely by evidence of commission of the substantive offense, subsequent court of appeals decisions have relied on *Robles* as support for the more general proposition that the test for inconsistent verdicts is whether the jury had to rely on the very same evidence in producing two apparently inconsistent verdicts. *People v. Atkins*, 844 P.2d 1196 (Colo.App.1992); *People v. Quinn*, 794 P.2d 1066 (Colo.App.1990).

**10.** The defendant in *Dunn* was charged in a three count indictment with violating federal liquor laws. The defendant was convicted of maintaining a common nuisance by keeping intoxicating liquor for sale at a specified place, but acquitted of the unlawful possession and unlawful sale of such liquor. The court in *Dunn* rejected the defendant's claim that his conviction should be discharged because the verdicts were inconsistent, holding that "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190, (citations omitted). The court concluded that "the verdict may have been the result of compromise, or of a mistake on the part of the jury.... But verdicts cannot be upset by speculation into such matters." *Dunn*, 284 U.S. at 394, 52 S.Ct. at 191.

The *Dunn* rule was elaborated on in *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (upholding jury verdict finding corporation's president guilty of introducing adulterated or misbranded drugs into interstate commerce, but acquitting the corporation of the same charge) and *Harris v. Rivera*, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (a defendant could not obtain relief by writ of habeas corpus on basis of inconsistent verdicts rendered after state court bench trial).

**11.** The dissent in *Robles* noted that the inconsistent verdicts issue decided by the majority was not briefed or argued by the parties. *Robles*, 160 Colo. 297, 301, 417 P.2d 232, 234 (1966) (McWilliams, J., dissenting).

**12.** In 1971, the "*Robles* rule" was codified by the General Assembly and now appears at § 18–2–206(2), 8B C.R.S. (1986):

A person may not be convicted of conspiracy to commit an offense if he is acquitted of the offense which is the object of the conspiracy where the sole evidence of conspiracy is the evidence establishing the commission of the offense which is the object of the conspiracy.

In other cases, we have formulated the test somewhat differently: verdicts are not inconsistent where each offense involved separate and distinct elements, even where the same evidence was used to support each charge, for a jury could find "from the very same evidence that the element of one crime was present while at the same time finding that the elements of another charged crime was absent." *People v. Mayfield,* 184 Colo. 399, 403, 520 P.2d 748, 750 (1974); *accord People v. Morgan,* 637 P.2d 338 (Colo.1981); *People v. Noble,* 635 P.2d 203 (Colo.1981).

In every reported decision since *Robles,* we have determined that the challenged verdicts were not inconsistent. As a result, we have not been confronted with the need to resolve the conflict between *Robles* and the *Crane* line of cases. For example, in *Maisel v. People,* 166 Colo. 161, 442 P.2d 399 (1968), we noted the divergent approaches adopted in *Crane* and *Robles,* but concluded that the defendant's conviction for larceny was not inconsistent with the verdict of acquittal for burglary. After reviewing the record, we concluded that "[t]he testimony and the reasonable inferences deducible therefrom were in considerable conflict," that the jury was entitled to determine the credibility of each witness, and that therefore, the jury's verdicts absolving the defendant of the burglary charge but convicting him of larceny were not necessarily inconsistent. *Maisel,* 166 Colo. at 167, 442 P.2d at 402.

In *People v. Mayfield,* 184 Colo. 399, 520 P.2d 748 (1974), we further refined the analysis begun in *Maisel* and again found that the verdicts in the case were not inconsistent. In *Mayfield,* the defendant argued that according to *Robles,* his acquittal of assault with intent to commit murder was inconsistent with his conviction for assault with a deadly weapon because the same evidence was offered to prove both crimes. We disagreed, concluding that *Robles* was distinguishable and holding that the verdicts were not inconsistent because the two crimes required different elements of proof and the jury could have found "from the very same evidence that the element of one crime was present while at the same time finding that the element of another charged crime was

absent." *Mayfield,* 184 Colo. at 403, 520 P.2d at 750. Subsequent decisions by this court have adopted the approach to inconsistent verdicts as articulated in *Mayfield. People v. Strachan,* 775 P.2d 37 (Colo.1989) (no inconsistency in verdicts where perjury charge included elements separate and distinct from elements of conspiracy charge); *People v. Morgan,* 637 P.2d 338 (Colo.1981) (verdicts not inconsistent where crimes with which defendant was charged required different elements of proof); *People v. Noble,* 635 P.2d 203 (Colo.1981) (no logical inconsistency in verdicts where each offense involved separate and distinct elements).

The defendant here has asked this court to reaffirm the rule set forth in *Robles,* as it has been refined in subsequent cases, prohibiting inconsistent acquittal and guilty verdicts that are based on identical evidence. It is noteworthy that subsequent to our decision in *Robles,* the United States Supreme Court reaffirmed the federal rule that if a defendant is convicted on some counts but acquitted on others, the convictions will generally be upheld, despite their rational incompatibility with the acquittals. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), reaffirming *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (consistent jury verdicts are not necessary).

In *Powell,* the jury had acquitted the defendant of the predicate felonies involving the distribution or conspiracy to distribute illegal drugs but had convicted her of the compound offense of using the telephone to facilitate the commission of those felonies. In reversing the court of appeals' decision that the acquittal on a predicate felony necessarily indicated that there was insufficient evidence to support a telephone facilitation conviction, the United States Supreme Court explained that

> where truly inconsistent verdicts have been reached, '[t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' *Dunn,* [284 U.S.] at 393, [52 S.Ct. at 190]. The

rule that the defendant may not upset such a verdict embodies a prudent acknowledgement of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Powell,* 469 U.S. at 64–65, 105 S.Ct. at 476–77.

The court also declined the invitation to establish a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that the verdict was not the product of lenity, but of some error that worked against them: "Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *Powell,* 469 U.S. at 66, 105 S.Ct. at 477. Noting that courts have always resisted the temptation to inquire into a jury's thought processes, the court went on to reason that "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts," a review "not to be confused with the problems caused by inconsistent verdicts." *Powell,* 469 U.S. at 67, 105 S.Ct. at 478. The court in *Powell* explained the difference between a sufficiency of the evidence review and a review of inconsistent verdicts as follows:

> Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. *This review should be independent of the jury's determination that evidence on another count was insufficient.* The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt.

*Id.,* (citations omitted and emphasis added). Thus, sufficiency of the evidence review and inconsistent verdict challenges have two different focuses, although they both theoretically protect against jury irrationality or error.

The court in *Powell* refused to create an exception to the *Dunn* rule where the jury acquits a defendant of a predicate felony but convicts on the compound felony, holding that consistency in verdicts of guilt and acquittal are not necessary and that "the best course to take is simply to insulate jury verdicts from review [on the grounds of inconsistency]." *Powell,* 469 U.S. at 69, 105 S.Ct. at 479. The court noted, however, that "[n]othing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other. *Cf. United States v. Daigle,* 149 F.Supp. 409 (DC), aff'd *per curiam,* 101 U.S.App.D.C. 286, 248 F.2d 608 (1957), cert. denied, 355 U.S. 913, 78 S.Ct. 344, 2 L.Ed.2d 274 (1958)." *Id.,* at 69 n. 8,[13] 105 S.Ct. at 479 n. 8.

---

**13.** The Colorado Court of Appeals incorrectly applied the exclusion explained in footnote eight to distinguish *Powell* from the present case. Footnote eight refers to those cases where a jury has returned verdicts convicting a defendant of two or more crimes, where the existence of an element of one of the crimes negates the existence of a necessary element of the other crime. In such situations, courts are generally uniform in their agreement that the verdicts are legally and logically inconsistent and should not be sustained. *Thomas v. United States,* 314 F.2d 936 (5th Cir.1963) (where jury convicted defendant of smuggling marihuana into the United States and also of obtaining the same marihuana within the United States, the verdicts were legally inconsistent and only one of the guilty verdicts will be sustained); *United States v. Daigle,* 149 F.Supp. 409 (D.C.Dist.Ct.1957) (where a guilty verdict on one count negatives some fact essential to a finding of guilt on a second count, the two guilty verdicts may not stand); *People v. Atkins,* 844 P.2d 1196 (Colo.App.1992) (dual convictions that are facially inconsistent cannot result in the conviction of more than a single offense or the imposition of more than a single punishment); *Allison v. Mayo,* 158 Fla. 700, 29 So.2d 750 (1947) (where jury convicted defendant of breaking and entering and also of breaking without entering, the two guilty verdicts are repugnant

Numerous state courts have also adopted the *Dunn* rule that consistency among verdicts on several counts of an indictment or information is unnecessary where a defendant is convicted on one or more counts but acquitted on others. As long as sufficient evidence supports each of the guilty verdicts, state courts generally have upheld such convictions irrespective of their rational incompatibility with the acquittals. *Hammond v. State,* 497 So.2d 558, 563 (Ala.Crim.App. 1986); *People v. Caldwell,* 36 Cal.3d 210, 203 Cal.Rptr. 433, 681 P.2d 274, 281 (1984); *State v. Gaston,* 198 Conn. 490, 503 A.2d 1157, 1159 n. 1 (1986); *Tilden v. State,* 513 A.2d 1302, 1307 (Del.1986); *People v. Foley,* 152 Ill. App.3d 354, 105 Ill.Dec. 385, 386, 504 N.E.2d 254, 255 *review denied,* 115 Ill.2d 545, 110 Ill.Dec. 460, 511 N.E.2d 432 (1987); *Parker v. Mooneyham,* 256 Ga. 334, 349 S.E.2d 182, 184 (1986); *Hammers v. State,* 502 N.E.2d 1339, 1343 (Ind.1987); *State v. Wise,* 237 Kan. 117, 697 P.2d 1295, 1299 (1985); *Wright v. State,* 307 Md. 552, 515 A.2d 1157, 1169 (1986); *People v. Spencer,* 154 Mich.App. 6, 397 N.W.2d 525, 532 (1986); *State v. Czech,* 343 N.W.2d 854, 856 (Minn.1984); *State v. Brown,* 132 N.H. 321, 565 A.2d 1035, 1040 (1989); *State v. Stewart,* 729 P.2d 610, 611 (Utah 1986); *Reed v. Commonwealth,* 239 Va. 594, 391 S.E.2d 75, 77 (1990); *State v. Ng,* 110 Wash.2d 32, 750 P.2d 632, 640 (1988); *State v. Bartlett,* 177 W.Va. 663, 355 S.E.2d 913, 919 (1987); *Lessard v. State,* 719 P.2d 227, 232 (Wyo.1986). *See also* W.E. Shipley, Annot., *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information,* 18 A.L.R.3d 259, § 3 at 274 (1968). Only a minority of state courts still hold that inconsistent verdicts require rever-

sal. *See, e.g., Davis v. State,* 684 P.2d 147, 149–50 (Alaska Ct.App.1984); *Davidson v. State,* 458 So.2d 880, 880–81 (Fla.Dist.Ct. App.1984); *State v. Mangrella,* 214 N.J.Super. 437, 519 A.2d 926, 928–29 (1986), *cert. denied,* 107 N.J. 127, 526 A.2d 194 (1987).

We conclude that the court of appeals erred in declining to follow *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), and holding instead that according to *Robles v. People,* 160 Colo. 297, 417 P.2d 232 (1966), Frye could attack his conviction for menacing with a deadly weapon on the ground that it is inconsistent with his acquittal of first degree sexual assault. We elect to follow those decisions of this court that have adhered to the rule established in *Crane* that mirrors the federal rule set forth in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). We believe that the rule announced in *Robles,* prohibiting verdicts where a defendant is convicted of conspiring to commit a substantive offense and acquitted of that substantive offense, where the same evidence relied on to establish the conspiracy is the evidence that was found insufficient to establish the substantive offense, should be strictly limited to the terms of section 18–2–206(2), 8B C.R.S. (1986), the statutory embodiment of the *Robles* rule. As this court explained in *Elstun v. People,* 104 Colo. 302, 91 P.2d 487 (1939), the justification for allowing inconsistent guilty and acquittal verdicts rests on a criminal defendant's constitutional right to a jury trial:

> Under our criminal jurisprudence we have surrounded one who is charged with a criminal offense with constitutional safeguards against the exercise of arbitrary power by courts, one of which is trial by

---

and a general verdict cannot be sustained); *Cross v. State,* 36 Md.App. 502, 374 A.2d 620 (1977) (where jury found defendant guilty of grand larceny and also receiving the same stolen goods, the general verdicts of guilty were inconsistent and will not be sustained); *Bell v. State,* 220 Md. 75, 150 A.2d 908 (1959) (a general verdict of guilty on two inconsistent counts, such as larceny and receiving stolen goods, is defective and cannot stand because a defendant cannot be both a thief and a receiver); *State v. Speckman,* 326 N.C. 576, 391 S.E.2d 165 (1990) (where jury found defendant guilty of both embezzlement and false pretenses, two legally incompatible and mutually exclusive offenses, case must be re-

manded for new trial on both charges). *See also* W.E. Shipley, Annot., *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information,* 18 A.L.R.3d 259, 322 § 20[c] (1968).

In the present case, Frye's convictions for second degree sexual assault and felony menacing are not legally or logically incompatible because each offense consists of separate and distinct elements that are not mutually exclusive. Thus, contrary to the court of appeals' assertion, the question in this case does not involve the legal incompatibility of the two guilty verdicts, but rather whether the two verdicts are factually inconsistent.

jury. There are a number of others, all necessary to protect the liberties of men. To retain the right of trial by jury it is necessary that the system remain practicable and workable, and that we do not erect barriers which are not predicated upon sound interpretations of constitutional principles and inconsistent with the practical means used by a jury in reaching its conclusions.

*Elstun,* 104 Colo. at 310–11, 91 P.2d at 491. Accordingly, we reverse that portion of the court of appeals' judgment declining to follow the *Crane–Powell* line of cases and adopt the rule set forth in those cases that consistent verdicts are not necessary.[14]

### III.

We conclude that consistency in verdicts is unnecessary in circumstances such as those presented here, thus reaffirming this court's decision in *Crane v. People,* 91 Colo. 21, 11 P.2d 567 (1932), and following the federal rule as articulated in *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Although our rationale is at odds with that of the court of appeals, we agree with the result reached by that court and therefore affirm its judgment upholding the defendant's conviction for felony menacing.

---

**14.** As previously noted, *see supra* at 24–25, each guilty verdict must be based on sufficient evidence. Sufficiency of the evidence issues are not to be confused with inconsistent verdict issues. *Powell,* 469 U.S. at 67, 105 S.Ct. at 477–78.